FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2016 SEP 21 A 8: 43

| ROQUE "ROCKY" DE LA FUENTE | : | CLERK US DISTRICT COURT |
| --- | --- | --- |
| Plaintiff, | : | ALEXANDRIA, VIRGINIA |
| | : | No. 1:16-cv-1201 |
| v. | : | |
| | : | |
| JAMES B. ALCORN, in his official capacity as a member of the Virginia Board of Elections; CLARA BELLE WHEELER, in her official capacity as a member of the Virginia Board of Election; SINGLETON B. McCALLISTER, in his official capacity as a member of the Virginia Board of Elections; | : | |
| | : | Filed Pro Se |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR EMERGENCY PRELIMINARY INJUNCTIVE RELIEF

Plaintiff respectfully submits this memorandum of law in support of his emergency motion for an emergency preliminary injunction seeking to enjoin defendants from printing ballots for the 2016 general election without plaintiff's name included to elect plaintiff's slate of presidential electors in Virginia's 2016 general election. Defendants' systemic conduct in violation of the First and Fourteenth Amendments to the United States Constitution and the Due Process and Supremacy Clauses of the United States Constitution require immediate equitable relief to prohibit defendants from printing election ballots without plaintiff's name included as a candidate for the office of President of the United States. Without the requested emergency relief, defendants conduct in violation of a myriad of federal constitutional requirements will be ratified and defendants will print ballots without plaintiff's name on the ballot and permanently impair both plaintiff's rights and the rights of all Virginia voters to be able to cast meaningful votes for the candidates of their choice.

1

## **SUMMARY OF THE FACTS**

Defendants require the collection of social security numbers (hereinafter singularly "SSN" or in the plural "SSNs") from prospective presidential electors. A full slate of presidential electors seeking election to the Virginia Electoral College must be secured before any election petitions may be circulated in Virginia on behalf of an independent candidate for President of the United States such as the plaintiff. Many otherwise willing presidential electors refused to be nominated by plaintiff as a presidential elector committed to cast one of their two ballot for his election as President of the United States for the sole reason that they did not want to provide their SSN on a public document to the Commonwealth of Virginia. As a direct and proximate result of these refusals, plaintiff was not able to circulate nominating petitions in the Commonwealth of Virginia for the entire period time permitted by law.

Defendants also seek to collect SSNs from every willing signer of plaintiff's nominating petitions. Defendants specifically and notoriously include on each nominating petition (that must be used by plaintiff) a space for each signer to record his or her SSN. Many otherwise willing signers of plaintiff's nominating petitions refused to sign for the sole reason that they did not want to record their SSN on a public document to be filed with the Commonwealth of Virginia.

The federal government has occupied the field and retains the sole authority to authorize either the mandatory or permissive collection of SSNs by the States. No federal law authorizes the Commonwealth of Virginia to collect or attempt to collect SSNs from either presidential electors or signers of election petitions. Defendants collection of SSNs from presidential electors and attempted collection of SSNs from signers of election petitions violates the Supremacy Clause of the United States Constitution. It also discourage the collection of otherwise valid

2

signatures on election petitions constituting the exercise of "core political speech" in violation of rights guaranteed to plaintiff under the First and Fourteenth Amendments to the United States Constitution.

Plaintiff timely filed his nominating petitions with the Virginia Department of Elections (hereinafter sometimes referred to as the "Department"). On August 31, 2016, the Department certified in an emailed "Notice of Deficiency" that the Candidate filed 1,122 petition pages containing 6,990 signatures of which at that time 1,437 were deemed valid. On September 7, 2016, the Department sent, via email, an "Amended Notice of Deficiency" alleging that the Candidate only filed 4,433 signatures of which 2,285 had been deemed valid. Plaintiff, in fact, submitted 6,990 signatures to the Department with 2,557 signatures are missing and have not been reviewed by the Department. The failure of the Department to review 2,557 signatures calls into question the validity of their review process.

On Friday, September 9, 2016, plaintiff timely filed an appeal to the Virginia Board of Elections (Hereinafter the "Board") the Department's "Amended Notice of Deficiency." Pursuant to §§ 24.2-506 and 24.2-543, plaintiff was required, **the very next day**, to present to the Board any and all evidence in support of plaintiff's appeal. Because of the complete lack of any opportunity to review individual signatures in Virginia until plaintiff was required to submit plaintiff's evidence in support of his appeal, plaintiff's campaign review their copies of plaintiff's nomination petitions and specifically submitted to the Board on Monday, September 12, 2016 that the basis of plaintiff's appeal was: (1) the Department's failure to review 2,557 signatures that the Department had either lost, destroyed or negligently handled; (2) that all 811 signatures classified by the Department as "Cannot Identify" were valid and (3) all 152 signatures classified by the Department as "Illegible" were also valid. Defendants summarily,

3

without affording plaintiff any hearing, rejected plaintiff's appeal. This action challenges the complete denial of due process of law by the Board in clear violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the impairment of gathering signatures as a direct and proximate result of defendants' illegal effort to collect SSNs from presidential electors and signers of plaintiff's nomination petition in violation of the Supremacy Clause of the United States Constitution and the First and Fourteenth Amendment guarantees of free speech.

## ARGUMENT

### A. Applicable Legal Standards

#### 1. *Preliminary Injunction*

A plaintiff is entitled to an injunction if he can show: (1) a reasonable probability of success on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) granting the injunction will not result in even greater harm to the nonmoving defendants; and, (4) that an injunction is in the public interest." See *McTernan v. City of York*, 577 F.3d 521, 525 (3rd Cir. 2009); *Winter v. Natural Res. Defense Council*, Inc., 555 U.S. 7 (2008).

When a party requests preliminary injunctive relief on the basis of the potential violation of the First Amendment, a showing of a reasonable probability of success on the merits often will be the determinative factor. With respect to the irreparable injury prong, for example, it is well-settled that the "loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Likewise, the determination of where the public interest lies also is dependent on a determination of the "reasonable probability of success" prong because "it is always in the public interest to

prevent the violation of a party's constitutional rights." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979). Furthermore upon a showing that plaintiff has a reasonable probability of success on the merits of his First Amendment claims, defendant, as the non-moving party, cannot assert and/or ***prove*** any interest that would be subject to greater injury than the loss of plaintiff's constitutional rights, because the analysis of defendant's interests are baked into the initial analysis of the merits of the claims as to whether the challenged provisions alleged to violate First Amendment rights narrowly advance a state interest sufficient to permit the impairment of plaintiff's First Amendment rights in the first instance. Plaintiff satisfies these four requirements as to his request for emergency injunctive relief and is, therefore, entitled to the requested emergency temporary restraining order.

**B.    Success on the Merits**

    **1.    Defendants' Violation of Supremacy Clause of the United States Constitution.**

Under the Supremacy Clause of the United States Constitution, state laws or actions violating federal law are invalid. U.S. Const. art. VI *See also*, *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983). State laws and actions in violation of federal authority are preempted. If state statutes or actions are "inconsistent with an Act of Congress, they are void, so far as that inconsistency extends." *Gibbons v. Ogden*, 22 U.S. 1, 31 (1824). Federal courts have authority under their equitable power "to enjoin unlawful executive action" of state actors in violation of federal preemption under the Supremacy Clause where defendants' violation of the Supremacy Clause implicate some other properly raised cause of action. *See*, *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384-87 (2015).

The collection of federal SSNs may only be authorized by federal law. As more fully explained below, Congress – through an extensive array of mandated and permitted collections

of SSNs – has clearly preempted and occupied the field with respect to the collection of SSNs by federal, state and private entities. Collection of SSNs absent federal authority implicates a violation of the Supremacy Clause of the United States Constitution. As applied to the instant case, defendants' unlawful collection and attempt to collect SSNs from presidential electors and signers of plaintiff's nominating petitions in violation of the Supremacy Clause had the domino effect of impairing and chilling "core political speech" protected under the First and Fourteenth Amendments to the United States Constitution which is actionable under 42 U.S.C. § 1983.

The resulting interplay between defendants' violation of the Supremacy Clause and its impact on free speech rights, prohibits this Court from accepting defendants' justification that use of SSNs narrowly advances a "compelling state interest" such as the use of SSNs made part of the validation process of signatures filed with defendants. Yes, SSNs may prove useful in defendants' validation process, but since collection of SSNs is not authorized and preempted by federal law defendants' may not justify their use as part of any First Amendment analysis where the SSNs also impaired plaintiff's First Amendment speech. Mandatory collection of SSNs from presidential electors delayed the circulation of plaintiff's nominating petitions; attempted collection of SSNs from signers of the petition scared away otherwise willing signers of plaintiff's nomination petition which, in the aggregate, curtailed plaintiff's ability to secure larger numbers of signatures sufficient to avoid the Department's amended "Notice of Deficiency."

<u>Federal Preemption of the Collection of SSNs</u>

Congress has clearly preempted the field as to who may collect SSNs and under what circumstances they may be authorized to collect and use SSNs. The Tax Reform Act of 1976, 42 U.S.C. § 405(c)(2)(c), authorizes states to collect and use SSNs in administering any tax, general

6

public assistance, driver's license, or motor vehicle registration law. The Food Stamp Act of 1977, as amended, 7 U.S.C. 2025(e)(1), mandates the Secretary of Agriculture and state agencies to require SSNs for program participation. The Deficit Reduction Act of 1984, 42 U.S.C. 1320b-7(a) and (b), requires that, as a condition of eligibility for Medicaid benefits and other federal benefit programs, applicants for and recipients of these benefits furnish their SSNs to the state administering program. The Comprehensive Omnibus Budget Reconciliation Act of 1986, 20 U.S.C. 1091(a)(4), requires students to provide their SSNs when applying for federal student financial aid. The Housing and Community Development Act of 1987, 42 U.S.C. 3543(a), authorizes the Secretary of the Department of Housing and Urban Development to require program applicants and participants to submit their SSNs as a condition of eligibility. The Family Support Act of 1988, 42 U.S.C. 405(c)(2)(C)(ii), requires states to obtain parents' SSNs before issuing a birth certificate unless there is good cause for not requiring the number. The Technical and Miscellaneous Revenue Act of 1988, 42 U.S.C. 405(c)(2)(D)(i), authorizes states and political subdivisions to require that blood donors provide their SSNs. The Food, Agriculture, Conservation and Trade Act of 1990, 42 U.S.C. 405(c)(2)(C)(iii), authorizes the Secretary of Agriculture to require the SSNs of officers or owners of retail and wholesale food concerns that accept and redeem food stamps. The Omnibus Budget Reconciliation Act of 1990, 38 U.S.C. 5101(c) authorizes the Secretary of Veterans Affairs to require individuals to provide their SSNs to be eligible for Department of Veterans Affairs' compensation or pension benefits programs. The Social Security Independence and Program Improvements Act of 1994, 42 U.S.C. 405(c)(2)(E)(ii), authorizes states and political subdivisions of states to use SSNs to determine eligibility of potential jurors. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 42 U.S.C. 666(a)(13) mandates that states have laws in effect that

require collection of SSNs on applications for driver's licenses and other licenses; requires placement in the pertinent records of the SSN of the person subject to a divorce decree, child support order, paternity determination; and requires SSNs on death certificates. The Higher Education Act Amendments of 1988, 20 U.S.C. 1090(a)(7), authorizes the Secretary of Education to request SSNs of parents of dependent students applying for federal student financial aid. The Internal Revenue Code (various amendments), 26 U.S.C. 6109, authorizes the Commissioner of the Internal Revenue Service to require that individuals include their SSNs on tax returns.

No federal law permits defendants from either mandating or attempting to collect SSNs from either presidential electors or signers of election petitions. If a federal law is required to permit federal authorities to collect SSNs then federal authorization is necessary for defendants to collect or attempt to collect SSNs as part of the election petition process. Accordingly, defendants collection of SSNs is in violation of the Supremacy Clause of the United States Constitution and unlawful for any purpose or asserted "state interest" in the validation of election petitions signatures. Defendants have other tools at their disposal to assist in the validation of election petition signatures. The collection of SSNs, however, is not a tool placed in defendants' quiver by the federal government.

  2. **Defendants' Violation of Supremacy Clause Impaired Plaintiff's Rights Guaranteed Under the First and Fourteenth Amendments to the United States Constitution.**

In evaluating ballot access cases, courts must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999). In evaluating the constitutionality of an election law, "the rigorousness of [the court's] inquiry . . . depends upon the extent to which a

challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

"[T]he Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557 (1969). "This right is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution." *Board of Educ., Island Trees Union Free School Dist, No. 26 v. Pico*, 457 U.S. 853, 867 (1982). The Supreme Court explained that the circulation of election petitions is "core political speech" afforded the highest level of protection under the First Amendment. *Meyer v. Grant*, 486 U.S. 414, 422 (1988). The Supreme Court has further held that when First Amendment protections are subject to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. *Burdick v. Takushi*, 504 U.S. 428 (1992); *Norman v. Reed*, 502 U.S. 279, 289 (1992) (when constitutional rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance).

Once strict scrutiny is applied, the government then has the burden to prove that the challenged law is constitutional. *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 450-51 (2007). To withstand strict scrutiny, the government must prove that the law is necessary to achieve a compelling governmental interest. *Id.* If this is proved, the state must then demonstrate that the law is also narrowly tailored to achieve the asserted interest. *Id.* In order to meet its burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (citing *Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1455 (1985)). In other words, the government must factually prove the existence of the evil and that the asserted interest is necessary and narrowly tailored to remedy that evil. Under the requirement that any policy must

9

be narrowly tailored to advance the asserted compelling governmental interest, defendants cannot forego a policy which is clearly less burdensome on free speech and association rights in favor of the policy challenged in this action.

Plaintiff was not permitted to circulate election petitions until plaintiff had nominated a full slate of presidential electors. The mandated collection of SSNs from presidential electors cause many to refuse to be nominated which delayed plaintiff's ability to circulate his nominating petitions for the full period of time permitted under Virginia law. Prospective presidential electors are rightly concerned about providing their SSN on an election petition against the constant drumbeat of warnings about identity theft.

In addition to the delay caused to the circulation of plaintiff's nominating petitions, willing signers of plaintiff's petitions refused to consider signing the petition when they saw the space printed on the petition for the signer's SSN. While recordation of the SSN is not mandatory, individual signers at first glance of the petition are not aware of the option to refuse, and they simply refuse to sign the petition without any further opportunity to educate the potential signer that the SSN information was optional. Accordingly, otherwise willing and potentially valid signers of plaintiff's nominating petitions were lost owing to defendants' unlawful effort to extract SSNs from individual signers of election petitions.

In tandem, defendants' collection of SSNs causing delay in the circulation of plaintiff's nominating petition and the loss of otherwise willing signers severely impaired plaintiff's ability to collect signatures that plaintiff otherwise could have collected, thereby subjecting his petitions to the Department's rejection. Accordingly, defendants' unlawful collection of SSNs is the direct and proximate cause of the rejection of plaintiff's nominating petition and plaintiff's removal from Virginia's 2016 general election ballot for the office of President of the United

States. The loss of petition signatures caused by defendants' unlawful conduct is a severe and direct impairment of plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

Furthermore, election petitions for the offices of President and Vice President, are circulated for federal offices, and case law makes it clear that individual states have a minimal interest in imposing unnecessary election regulations because individual states do not retain a compelling interest in having their own local election laws from having an impact on a national election. Flatly stated, not every election regulation which is allowed for state offices are permitted to interfere with the nation-wide election for President and Vice-President. In *Anderson*, the United States Supreme Court further clarified that:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. Thus, in a Presidential election, a State's enforcement of more stringent ballot access requirements...has an impact beyond its own borders. Similarly, the State has a less important interest in regulating Presidential elections than state-wide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries....The pervasive national interest in the selection of candidates for national office, and this national interest is greater than any interest of an individual State.

*Anderson* at 794-95. Accordingly, defendants' unlawful conduct in collecting federal SSNs as part of election petitions for the offices of President and Vice-President of the United States further deprives defendants' from any justification for the collection of SSNs at the expense of ballot access and rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.

### 3. **Defendants' Violation of Due Process Clause**

Simply stated, defendants, pursuant to §§ 24.2-506 and 24.2-543 of the Code of Virginia, allow only one (1) day after an appeal of a "Notice of Deficiency" is filed with the Board to generate any and all evidence that invalidated signatures are, in fact valid. The Due Process Clause requires state actors to give individuals who seek to challenge their conduct sufficient time and ability to prove that their actions are incorrect. The United States Supreme Court explained that procedural due process requires that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959); *quoted with approval*, *Goldberg v. Kelly*, 397 U.S. 270 (1970). While plaintiff accepts that in the context of a review of the validity of an election petition, time is of the essence and ballots at some point must be printed, however, allowing only one (1) day for plaintiff to review thousands of rejected signatures where such review requires matching petition signatures against records in a computer data base maintained and controlled by defendants in Richmond Virginia, and where plaintiff is a resident of the State of Florida, is clearly devoid of any procedural due process in clear violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

At this stage of the election calendar, the only available remedy to cure defendants' denial of due process of law is to enjoin enforcement of the challenged statutes and enjoin defendants' printing of ballots without plaintiff's name as a candidate for the office of President of the United States.

C. **Irreparable Harm**

"The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elron v. Burns*, 427 U.S. 347, 353 (1976). Thus, in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008). Absent the requested equitable relief, plaintiff, and the voters of Virginia, will continue to suffer irreparable deprivation of constitutional rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.

D. **The Balance of Equities**

As discussed above, plaintiff will suffer irreparable harm if defendants are permitted engage in unlawful conduct in the collection of SSNs and deny due process of law through the enforcement against plaintiff of §§ 24.2-506 and 24.2-543 of the Code of Virginia. On the other hand, defendants can claim no harm resulting from the issuance of the requested emergency preliminary injunction. Accordingly, the balance of equities favors plaintiff.

E. **The Public Interest**

The health and well-being of a democracy depends upon choice at the ballot box. Enjoining defendants unlawful conduct in the collection of SSNs and enforcement of §§ 24.2-506 and 24.2-543 of the Code of Virginia, will result is greater citizen participation in the control of their government via the ballot. Furthermore, the public interest is served by defendants, as agents of the State of Virginia, acting within the limits and protections afforded by the Supremacy and Due Process Clauses of the United States Constitution and free speech

guarantees of the First and Fourteenth Amendments. Therefore, the public interest will be strongly served by this Court issuing the requested relief.

## CONCLUSION

Because the movant will likely succeed on the merits and suffer irreparable harm if the injunction does not issue, and because the balance of harms and impact on the public interest favor issuance of the requested emergency preliminary injunction, this Court should grant plaintiff's instant motion and enjoin defendants from printing general election ballots without plaintiff's name on Virginia's 2016 general election ballot for the office of President of the Untied States.

Respectfully submitted,

Dated: September 21, 2016

Roque "Rocky" De La Fuente
Plaintiff, acting *pro se*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 21, 2016, he personally caused to be served upon all defendants a true and correct copy of the foregoing "Memorandum of Law in Support of Plaintiff's Motion for Emergency Preliminary Injunctive Relief" at the following address:

Virginia Board of Elections
Washington Building
1100 Bank Street, 1st Floor
Richmond, VA 23219-3642

Dated: September 21, 2016

Roque "Rocky" De La Fuente
Plaintiff acting *pro se*